**ALAMO NAVAJO SCHOOL BOARD, INC., et al., Plaintiffs-Appellees,**

v.

**Cecil D. ANDRUS, et al., Defendants-Appellants.**

**No. 80–1811.**

United States Court of Appeals, Tenth Circuit.

Argued May 12, 1981.

Decided Nov. 13, 1981.

230

Edward J. Shawaker, Dept. of Justice, Washington, D. C. (Peter R. Streenland, Jr., Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D. C., R. E. Thompson, U. S. Atty., Ron Ross, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for appellants.

Michael P. Gross, Santa Fe, N.M. (Ronald J. VanAmberg, Santa Fe, N.M., with him on the brief), of Roth, VanAmberg & Gross, Santa Fe, N.M., for appellees.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

In September 1979, appellee Alamo Navajo School Board, Inc. (Board), a tribal organization of the Alamo Navajo Band and the Navajo Tribe, contracted with appellant Bureau of Indian Affairs, United States Department of the Interior (Bureau) for the operation, by the Board, of a new elementary school for children of the Alamo Navajo community. This contract was entered into pursuant to the Indian Self Determination Act § 102(a), 25 U.S.C. § 450f(a) (1976), which directs the Secretary of the Interior, upon the request of any Indian tribe, to enter into a contract with any tribal organization for the provision of educational programs. The purpose of the Act is to assure maximum Indian participation in the provision of educational services to Indian communities. 25 U.S.C. § 450a (1976). In order to provide uniform funding to all Indian schools, Congress required the Secretary to establish a formula for determining the amount of funding to any school, but also required the Secretary to provide additional funds for the general local operation of contract schools, where necessitated by cases of emergency or unforeseen contingency. 25 U.S.C. § 2008(a) and (d) (Supp. 1979). Pursuant to these statutes, the Secretary promulgated the Indian School Equalization Program (ISEP), 25 C.F.R. 31h.1–31h.143 (1979). ISEP sets forth the allotment formula and establishes two contingency funds. The School Disaster Contingency Fund, 25 C.F.R. 31h.71–31h.77 (1979), provides relief from natural disaster and acts of vandalism. The Implementation Set-Aside Fund, 25 C.F.R. 31h.78 (1979), is used to adjust errors due to "underprojections, data error, misclassification of students, and similar reporting errors, or to provide for the initial funding of new schools under the formula." 25 C.F.R. 31h.79 (1979) specifically states that set-aside funds must be allocated solely through the ISEP formula.

The instant contract provided operating funds for 180 school days during each fiscal year, commencing with fiscal year 1980—October 1, 1979 through September 30, 1980. The Board concedes that it received for fiscal year 1980 the amount dictated by the formula, but contends that a special circumstance mandates the disbursement to it of contingency funds as well.

The school year for Alamo Navajo youth began in mid-August 1979, some 25 school days prior to the start of fiscal year 1980. However, the Board did not operate its school until October 1, 1979. During the earlier 25-day period, approximately two-thirds of the then future students of the Board's contract school attended other schools; one-third chose not to attend school. Although the contract called for the provision of 180 school operating days during fiscal year 1980, the Board allegedly understood that it was obligated to provide the equivalent of 180 school days during the period October 1, 1979 through May 30, 1980. As a result of this alleged misunderstanding, the Board expended all its contract funds during this period and was left without the means to fund operation of its school during the period mid-August 1980 through September 30, 1980. The Board brought the action below to compel the Bureau to provide $134,833 from contingency funds for this purpose.

Initially, the trial court entered a temporary restraining order (TRO) preventing the dispersal by the Bureau of any part of $1,135,609, the entire amount remaining in the Implementation Set-Aside Fund (ISAF). After consideration on the merits, the trial court held that the Bureau had breached a clear ministerial duty to provide additional funds to the Board to facilitate its operations in the final weeks of fiscal year 1980 and that such a breach, in this factual setting, constituted a waiver of sovereign immunity. The court ordered the Bureau to pay the Board $112,833 immediately and to sequester an additional $22,000, pending a determination of the amount expended by the Board for an unauthorized playground. The court then dissolved the TRO as to the balance of the ISAF.

This court subsequently stayed the trial court's order, which had the effect of reviving the earlier TRO preventing dispersal by the Bureau of any part of the ISAF.

In the bench trial below, a significant controversy arose over the question of jurisdiction. The Board contended that the federal district court had jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976), mandamus, 28 U.S.C. § 1361 (1976), or federal question, 28 U.S.C. § 1331 (1976).

■ The trial court correctly found that the Administrative Procedure Act did not confer jurisdiction. The United States Supreme Court has held expressly that the Act was not intended to afford an implied grant of subject matter jurisdiction permitting federal judicial review of agency action. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537 (10th Cir. 1980). The 1976 amendment to section 702 permits district court review of agency action only for relief other than money damages, and, however framed, this action essentially is one for money damages.

The court did find that it had both mandamus and federal question jurisdiction. In reaching its decision, the trial court concluded that 25 U.S.C. § 2008(d), which required the Secretary to provide funds for the general local operation of contract schools "where necessitated by cases of emergencies or unforeseen contingencies," when considered in light of Congress' declared policy in 25 U.S.C. § 450a, imposed upon the Secretary a ministerial duty to use contingency funds to aid the Board in its plight. The court conceded that the School Disaster Contingency Fund was not intended for such a purpose, but concluded that the ISAF, the only other source of emergency funds, must have been provided for relief of the instant problem, or the mandate of 25 U.S.C. § 2008(d) would be breached. In any event, the court found that the Board's school was a "new school" for the purposes of the ISAF and that the mandate of 25 U.S.C. § 2008(d) provided an exception to the prohibition of 25 C.F.R. 31h.79 against allocating any part of the ISAF except by formula.

■ The meaning of the language of 25 U.S.C. § 2008(d)—"emergencies or unforeseen contingencies"—unfortunately is not entirely clear. It is apparent, however, that too broad an interpretation of that language renders meaningless a formula intended to provide uniform funding to all Indian schools. We conclude that Congress intended the determination of what constitutes an emergency or unforeseen contingency to be discretionary with the Secretary and that the Secretary's provision of the School Disaster Contingency Fund and an Implementation Set-Aside Fund, to be used as provided in his regulations, is a reasonable exercise of that discretion. This court has held that a statutory duty can be the basis for mandamus jurisdiction only if the duty is clear and certain and leaves nothing to the discretion of the official involved. *Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir.), *cert. denied*, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966). The very ambiguity of 25 U.S.C. § 2008(d) calls for discretion. Congress conceded as much in its observation of the need for the Secretary's careful monitoring to ensure against abuses. H.R. Rep. No. 95–1137, at 121, U.S.Code Cong. & Admin.News 1978, 4971. Because we conclude that the Secretary's duty under 25 U.S.C. § 2008(d) was discretionary, rather than ministerial, we hold that mandamus jurisdiction was inappropriate to enforce that duty. Nor can mandamus jurisdiction be based upon an alleged failure of the Bureau to comply with the Secretary's regulations, even though the trial court found that the Board's school was a "new school" for purposes of the ISAF. 25 C.F.R. §§ 31h.78 and 31h.79 provide:

§ 31h.78 Establishment of a formula implementation set-aside fund.

There shall be set aside an amount not to exceed $2 million dollars to be used during fiscal year 1980 by the Director to facilitate the implementation of formula funding under this part. The fund is to provide the means of adjusting particular local school entitlements which are allocated in error due to underprojections, data error, misclassification of students, and similar reporting errors, or to provide

for the initial funding of new schools under the formula, which have been started after the spring ADM counts, without reducing allotments made for other schools. Balances in this set-aside fund shall be apportioned through the formula during the first week in April by the Director or at such earlier time as he or she deems that significant ADM reporting fluctuations have ceased.

§ 31h.79 Prohibition.

The formula implementation set-aside fund shall not be used as a discretionary fund by the Director for any purpose, and it shall be allocated solely through the Indian School Equalization Formula.

It is clear that these regulations are intended only to provide funding to a "new school" on the same basis that other Indian schools were funded. They are not intended to provide for any other contingency. There is evidence in the instant case that attendance at the Board's school did increase slightly after the early weeks of its operation, during which time an initial count for the purposes of funding was taken. This appears to be the kind of situation contemplated by the regulations. However, since the increase was slight, any loss to the school was minimal, and the Bureau was justified in its policy of changing a count week only to correct gross inaccuracies. This appears to have been a proper exercise of discretion, and it is appropriate for this court to defer to the Secretary's interpretation. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). There is no way to construe the ISAF as a basis for additional funding for the Board.

Finally, mandamus is inappropriate because the Board has another remedy. "Mandamus does not supersede other remedies, but rather comes into play where there is a want of such remedies." *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969). As discussed below, this case properly belongs in the Court of Claims. That alternative fully protects the Board's interest.

The trial court also found that it had jurisdiction of this case under 28 U.S.C. § 1331 (1976) because it involved a federal question. However, this statute does not give district courts jurisdiction of a suit that must be brought exclusively in the Court of Claims. *Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081 (6th Cir. 1978). We conclude that the trial court erred in its determination that this action is not a contract dispute. Although the Board characterized its action as one for declaratory and mandatory relief, the essence of the remedy it seeks is money damages, the propriety of which can be determined only by reference to the contract. The Board argues that no interpretation of the contract is at issue. However, it contends that its overspending resulted from its understanding that the contract imposed upon it a duty to provide the equivalent of 180 school days during the period October 1, 1979 through May 30, 1980. A contract dispute is apparent in the question of whether the Board had such a duty under the contract. Accordingly, we hold that the Court of Claims has exclusive jurisdiction of this case in accordance with the provisions of the Tucker Act, 28 U.S.C. § 1491 (Supp. 1979). The exclusive jurisdiction of the Court of Claims cannot be avoided by framing a district court complaint to appear to seek only injunctive, mandatory, or declaratory relief. *Bakersfield City School District of Kern County v. Boyer*, 610 F.2d 621, 628 (9th Cir. 1979).

We hold that the federal district court was without jurisdiction to hear this matter. Accordingly, we reverse and remand to the trial court with instructions to enter an order of dismissal without prejudice and to dissolve its order restraining disbursement of the ISAF.

REVERSED AND REMANDED.