**Wallace ROGERS and Southeast Kansas Community Action Program, Inc., Plaintiffs-Appellants,**

**v.**

**Dwight INK, Director of the Community Services Administration, and David Stockman, Director of the Office of Management and Budget, Defendants-Appellees.**

No. 82–2286.

United States Court of Appeals, Tenth Circuit.

June 28, 1985.

David Achtenberg of Achtenberg & Achtenberg, P.C., Kansas City, Mo., for plaintiffs-appellants.

Richard A. Olderman, Atty., Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., William Kanter,

Civ. Div., Dept. of Justice, Washington, D.C., and Jim J. Marquez, U.S. Atty., Topeka, Kan., were also on the brief), for defendants-appellants.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and BOHANON, District Judge*.

HOLLOWAY, Chief Judge.

Plaintiffs, a Kansas organization which provides assistance to low income residents and a recipient of such assistance, brought this action challenging defendants' refusal to fund the entire 1981 program year of the organization. This refusal followed a decision by Congress to replace the former system of direct federal funding of state and local anti-poverty organizations with a block grant program effective October 1, 1981.

The district court granted defendants' motion to dismiss, treating it as a motion for summary judgment, both on the merits and on the ground that plaintiffs' action was premature. We hold that the district court was without jurisdiction of this action which essentially requested the court to compel defendants to effect release and payment of grant funds. Accordingly, we remand to the district court with directions to transfer the case to the United States Claims Court.

## I

Prior to 1981, the federal government provided financial assistance to low income people through various state and local Community Action Agencies ("CAAs") funded by the Community Services Administration ("CSA"). The CAAs were divided into two categories: large CAAs (which received over $300,000 annually in federal funds) and small CAAs (which received less than $300,000 annually in federal funds). Large CAAs generally were funded by two separate grants: one grant at the beginning of the CAA's program year to the end of the federal fiscal year on September 30, and another grant at the commencement of the subsequent federal fiscal year on October 1 to the end of the CAA's program year. Large CAAs generally had their programs funded from congressional appropriations for two separate federal fiscal years. Small CAAs, on the other hand, generally were funded by a single grant at the beginning of the CAA's program year from congressional appropriations for one federal fiscal year. There were approximately 740 small CAAs and 160 large CAAs.

The Omnibus Budget Reconciliation Act of 1981,[1] enacted on August 13, 1981, changed the way federal funds were distributed to CAAs. These changes were effective on October 1 of that year. The CSA was abolished and replaced with a Community Service Block Grant Program which authorized the Secretary of Health and Human Services to make block grants to the states "to ameliorate the causes of poverty in communities within the State." 42 U.S.C. § 9901(a).[2] The Act authorized the Director of the Office of Management and Budget ("OMB") to provide for the termination of the affairs of the CSA.[3]

The Act provided that after certain reductions were made from the annual appropriation, each State would receive "an amount which bears the same ratio to such remaining amount as the amount received by the State for fiscal year 1981 under Section 2808 of this title bore to the total

---

* The Honorable Luther L. Bohanon of the United States District Court for the Eastern, Northern and Western Districts of Oklahoma, sitting by designation.

1. Pub.L. No. 97–35, Title VI, 95 Stat. 511 (1981).

2. The Act established an Office of Community Services within the Department of Health and Human Services to carry out these functions. 42 U.S.C. § 9905.

3. The Act provided that the Director of OMB was to "provide for the transfer or other disposition of personnel, assets, liabilities, grants, contracts, property, records, and unexpended balances of appropriations, authorizations, allocations, and other funds held, used, arising from, available to, or to be made available in connection with implementation of the authorities terminated by Section 9912(a) of this title as necessary to effectuate the purposes of this chapter." 42 U.S.C. § 9911(e).

amount received by all States for fiscal year 1981 under such part, except that no State shall receive less than one-quarter of 1 percent of the amount appropriated under section 9901 of this title for such fiscal year." 42 U.S.C. § 9903(a)(1). The states then would use this money in their discretion to fund local anti-poverty efforts, including the former CAAs. 42 U.S.C. §§ 9902(1), 9904(c). The Act permitted states to opt out of the block grant program for fiscal year 1982 and instead have the Secretary of Health and Human Services directly fund state and local CAAs under the former law. 42 U.S.C. § 9911. Beginning in fiscal year 1983, all states were required to operate under the block grant program.

Plaintiff Southeast Kansas Community Action Program ("SEK–CAP") is a large CAA in Kansas.[4] Plaintiff Wallace Rogers is a low income Kansas resident served by SEK–CAP. SEK–CAP's program year runs from June 1 through May 31. SEK–CAP received $384,000 for fiscal years 1978, 1979 and 1980. On June 1, 1981, SEK–CAP received $114,222 in federal funding for the first four months of its program year through September 30. With the passage of the new Act on August 13, there were no monies appropriated for fiscal year 1982 to fund CAAs.

Defendants chose to use the remaining funds from fiscal year 1981 to fund the few small CAAs that had not yet received full funding for program years beginning prior to October 1. Defendants decided not to make further payments for part or all of program years extending beyond October 1 to large CAAs that already had received their initial grant for the portion of their program year ending on September 30. Surplus funds from fiscal year 1981 totaling $1.4 million remained in the CSA region responsible for distributing funds to CAAs in Kansas after funding these small CAAs. Although the director of this region requested authority to use these remaining

funds for payments to large CAAs for at least a portion of their program years remaining after October 1 as had been done in other regions, this request was denied.

Plaintiffs brought this action for declaratory, injunctive and other relief on September 30, 1981, the day before the new Act was to take effect and the day before the beginning of fiscal year 1982. Plaintiffs sought, among other things, to enjoin defendants from returning to the Treasury any appropriations made to CSA, to obtain a declaratory judgment that defendants' funding decisions from August 13 to October 1 violated applicable law and regulations, and to compel defendants to provide funding for SEK–CAP for the remainder of its program year from October 1, 1981 through May 30, 1982. The district court denied a temporary restraining order. I R. 15–18. Thereafter, defendants moved for dismissal or summary judgment, *id.* at 24–58, and plaintiffs filed a response, *id.* at 194–242. The district court treated the motion to dismiss as a motion for summary judgment because the parties had supplied various affidavits in support of their motions. *Id.* at 252.

The district court granted defendants' motion to dismiss, holding that the action was "premature and should be dismissed on that ground" because SEK–CAP was eligible to receive money under the block grant program administered by Kansas. I R. 253–54. However, the court addressed plaintiffs' arguments on the merits and concluded as follows.

First, the disposition of funds by CSA in its final six weeks of operation did not violate the statutory minimum level of funding provided to Kansas under 42 U.S.C. § 2812(a) or the statutory guarantee of equitable distribution of funds between rural and urban areas under 42 U.S.C. §§ 2833(b) and 2967 because those sections were repealed by the new Act effective October 1, 1981, the day the decision not to

---

**4.** Plaintiff Economic Opportunity Foundation, another large CAA in Kansas, is not a party to this appeal.

give SEK–CAP additional funds became effective. 42 U.S.C. § 9912(a). I R. 254–55.

Second, the funding decision did not deprive plaintiffs of due process of law. Plaintiffs had no statutory or regulatory right to notice and a hearing because the right to notice and opportunity to be heard guaranteed by 42 U.S.C. § 2944(2) and 45 C.F.R. § 1067.2 before a CAA's application for refunding could be reduced or denied did not apply to cases of reduced appropriations. 45 C.F.R. § 1067.2–4(a). Plaintiffs had no constitutional right to notice and a hearing because they had no property interest in continued funding for the remainder of their program year beyond October 1, 1981, when Congress had chosen to dismantle the entire funding program. I R. 255–58.

Third, the funding of small CAAs for program years ending in fiscal year 1982 while denying large CAAs similar funding did not deprive plaintiffs of equal protection and was not arbitrary, capricious, or an abuse of discretion under 5 U.S.C. § 706(2)(A). I. R. 12–18.[5]

For reasons that follow, we find that there is a serious question concerning the subject matter jurisdiction of the district court which must be addressed and is dispositive.[6]

---

**5.** The district court also rejected plaintiffs' argument that defendants' refusal to use fiscal year 1981 funds for the purpose of funding SEK–CAP's program which continued into fiscal year 1982 violated Article 2, Section 3 of the United States Constitution and the Impoundment Control Act of 1974, 31 U.S.C. § 1400, *et seq.* I R. 258–60. Plaintiffs do not challenge this decision on appeal.

**6.** *See Tafoya v. Department of Justice,* 748 F.2d 1389, 1390 (10th Cir.1984) ("Insofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, *sua sponte,* satisfy itself of its power to adjudicate in every case and at every stage of the proceedings and the court is not bound by the acts or pleadings of the parties.").

**7.** The district courts have concurrent jurisdiction under 28 U.S.C. § 1346(a)(2) with the Claims Court in those cases where the claim does not exceed $10,000:

## II

The Tucker Act provides that the United States Claims Court has exclusive jurisdiction to render judgment upon any claim against the United States exceeding $10,000 "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). *See United States v. City of Kansas City,* 761 F.2d 605, 607–08 (10th Cir.1985).[7] Exclusive jurisdiction therefore rests in the Claims Court if three conditions are satisfied: (1) the action is against the United States; (2) the action seeks monetary relief in excess of $10,000; and (3) the action is founded upon the Constitution, federal statute, executive regulation, or government contract. *See Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d 471, 473 (4th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). We are satisfied that plaintiffs' claim meets these criteria and that exclusive jurisdiction is thus in the Claims Court.

Plaintiffs' prayer requested two forms of relief. First, a declaratory judgment was sought that defendants' action in funding small CAAs for program years ending in fiscal year 1982 while denying large CAAs like SEK–CAP similar funding violated con-

---

(a) The district court shall have original jurisdiction, concurrent with the United States Claims Court, of:

. . . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978 . . . .

28 U.S.C. § 1346.

stitutional safeguards of due process and equal protection and statutory requirements guaranteeing minimum funding and urban-rural equity and prohibiting arbitrary and capricious conduct. Second, an injunction was requested essentially requiring defendants to keep available the funds plaintiffs allege they are entitled to for the remainder of their program year from October 1, 1981 to May 30, 1982 and to give them these funds.[8] In this connection we note that the federal defendants were sued in their official capacities. I R. 63.

Although there is a conflict as to exactly what amount plaintiffs claim that SEK–CAP is entitled to for the additional eight months in funding, SEK–CAP did receive $114,222 for the period from June 1, 1981 to September 30, 1981. Plaintiffs are therefore seeking recovery of at least $228,444.[9]

■ Several courts have noted that "when the 'prime objective' or 'essential purpose' of the complaining party is to obtain money from the federal government (in an amount in excess of $10,000), the Claims Court's exclusive jurisdiction is triggered." *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied*, —

U.S. ——, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *see also Alamo Navajo School Board, Inc. v. Andrus*, 664 F.2d 229, 233 (10th Cir.1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982). A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States. *See, e.g., United States v. City of Kansas City*, 761 F.2d at 608; *New Mexico v. Regan*, 745 F.2d at 1322; *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 824 (10th Cir. 1981); *Alamo Navajo School Board, Inc. v. Andrus*, 664 F.2d at 233.[10]

Although plaintiffs' first prayer seeks declaratory relief, the underlying purpose of the action was to obtain from the United States funds that SEK–CAP allegedly was due for the final eight months of its program year. We have held that similar claims fall within the exclusive jurisdiction of the Claims Court. For example, in *United States v. City of Kansas City*, a city claimed that it was arbitrarily and capriciously denied federal grant assistance and sought a judgment of over $2 million in monetary damages. Subsequently, "appar-

---

**8.** Plaintiffs' second prayer for relief sought

[a] temporary restraining order, preliminary injunction and permanent injunction restraining and enjoining defendants from expending, obligating, returning to the treasury, or otherwise committing any funds available to them which legally could be used to continue the funding of plaintiffs' respective program years; requiring defendants to make an accounting to the court of all such available funds; requiring defendants to retain the necessary obligational authority after September 30, 1981, to provide such additional funding to plaintiffs as is ordered by the court; *requiring defendants to fund plaintiffs for their respective program years at the level approved by CSA* as described in paragraphs 14(a) and 14(b); restraining and enjoining defendants from denying funding to plaintiffs on an inequitable basis, or a basis that violates or fails to conform to relevant Constitutional, statutory or regulatory criteria or requirements; and restraining and enjoining defendants from further violations of Constitutional, statutory and regulatory requirements.

I R. 70 (emphasis added).

**9.** This figure assumes that the $114,222 grant awarded on June 1, 1981, represented an amount proportionate to the total expected grant for the entire program year. Under this approach, the $114,222 represented four months out of the program year ($4/12$) while $228,444 represented the remaining months in the program year ($8/12$), for a total grant for the entire program year of $342,666. This practice was followed in previous years in funding SEK–CAP.

Other evidence, however, suggests that plaintiffs expected to receive a total of between $439,-000 and $469,000 for SEK–CAP's program year. See I R. 64 (amended complaint), 72–73 (affidavit). Under this evidence, plaintiffs apparently would claim that SEK–CAP is entitled to $324,-778 or $354,778 in additional funding for the remaining eight months of its 1981 program year.

**10.** On appeal, plaintiffs state that by the complaint "SEK–CAP sought to restrain defendants from returning [fiscal year 1981] funds to the Treasury, (Complaint ¶ VI–1, ROA8) and sought to require defendants to issue SEK–CAP's second installment from those funds." Brief for Appellants 10.

ently realizing the Tucker Act problem, [the city] began to seek merely injunctive and declaratory relief." 761 F.2d at 608. We concluded that

> beyond the City's shift in focus from monetary damages to declaratory and injunctive relief lies the simple reality that at both the onset of the suit and the time the case was submitted for summary judgment the City's aim was the same— the obtaining of the grant money. The mere characterization of what is ultimately a monetary claim as a suit for nonmonetary relief cannot work to avoid the exclusive jurisdiction of the Claims Court.

*Id.* at 608–09.[11]

We feel that as in *United States v. City of Kansas City,* the plaintiffs' claim is within the exclusive jurisdiction of the Claims Court. In that case, the plaintiffs tried to request only injunctive and declaratory relief instead of monetary damages. Here, plaintiffs sought to require defendants to fund SEK–CAP for the remainder of its 1981 program year. I R. 70. Although this relief was sought by means of an injunction, "a plaintiff may not transform a claim for monetary relief into an equitable action simply by asking for an injunction that orders the payment of money." *New Mexico v. Regan,* 745 F.2d at 1322. In *New Mexico v. Regan,* the State sought to recover federal royalties used to pay windfall profits tax, and also requested an accounting and declaratory relief. We held that the case was within the exclusive jurisdiction of the Claims Court because the State's "additional requests for an accounting and declaratory relief are merely incidental and subordinate to the basic suit for money." 745 F.2d at 1322.

Although the United States was not a named party in this action, the effect of suing defendants in their official capacities while seeking monetary relief is to make the action one against the United States. We have held in similar circumstances that when plaintiffs' "primary purpose is to fix the government's and not the [defendant] Secretary's liability ... we must conclude that the suit is essentially one designed to reach money which the government owns." *New Mexico v. Regan,* 745 F.2d at 1322; *see also Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted) (quoting *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), and *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949)) ("The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration ... or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' "); *Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d at 474 ("[B]oth because this is a suit against a federal official and any judgment recovered would expend itself on the public treasury, we construe this action as one against the United States for purposes of the Tucker Act.").

The Government argues that "[i]f plaintiffs' theory is that [SEK–CAP] had a contract with CSA by which CSA obligated itself to pay SEK–CAP a sum of money, in installments, their claim is if anything a Tucker Act claim and exclusive jurisdiction lies in the United States Claims Court." Brief for the Appellees 25. We believe that plaintiffs' claim for additional funding for SEK–CAP's 1981 program year is apparently based on the theory that when CSA provided the $114,222 in funding on

---

**11.** *Amalgamated Sugar Co. v. Bergland,* 664 F.2d at 820–24, also supports our conclusion that the Claims Court has exclusive jurisdiction of plaintiffs' claim. In *Bergland,* plaintiffs sought a declaratory judgment in the district court that certain sugar was eligible for a federal price support program. A potential federal grant of $700,000 for storage payments turned on this eligibility determination. Plaintiffs did not make a claim for this grant in the district court but instead sought to have their eligibility determined. We held that plaintiff's claim was within the exclusive jurisdiction of the Claims Court because "Plaintiffs' ultimate aim in seeking a declaratory judgment was to obtain the grant money, an amount in excess of $10,000." *United States v. City of Kansas City,* 761 F.2d at 608.

June 1, 1981 for the portion of its program year ending September 30, 1981, CSA obligated itself to provide additional funding for the remainder of SEK–CAP's program year from October 1, 1981 through May 30, 1982. Plaintiffs' complaint alleges that CSA approved SEK–CAP's funding for its entire 1981 program year. I R. 64–65. In their memorandum in opposition to defendants' motion to dismiss, plaintiffs alleged that the funding of large CAAs was done through "installments," with the second installment merely a "ministerial act" completing the funding for its entire program year which was guaranteed once the first installment was made so long as the large CAA complied with the terms and conditions of the grant. *Id.* at 198–200. On appeal plaintiffs repeatedly refer to the remaining funds for SEK–CAP's 1981 program year as a second "installment" to which it was entitled once SEK–CAP's grant application was approved and the first "installment" of $114,222 was paid on June 1. *See, e.g.*, Brief of Appellants 6–8. Hence we must treat plaintiffs' action as one primarily seeking funds for the remainder of SEK–CAP's 1981 program year on the basis of an alleged agreement that once its grant was approved and the $114,222 payment was made on June 1, such funds would be provided.

Jurisdiction of this case therefore rests in the Claims Court because the action is in essence against the United States, it seeks monetary relief in excess of $10,000, and it is based on an alleged agreement by CSA to fully fund SEK–CAP's 1981 program year once the $114,222 payment was made on June 1, 1981 for that part of SEK–CAP's program year ending on September 30, 1981 and on other claims premised on constitutional, statutory and regulatory grounds. We hold that the district court lacked jurisdiction to entertain this action.

Thus we need not discuss the contentions of plaintiffs which challenge the district court's ruling against them on the merits.

### III

Accordingly, we vacate the judgment of dismissal on the merits and remand the case to the district court with directions that the action be transferred to the United States Claims Court "in the interest of justice" under 28 U.S.C. § 1631.[12] *See, e.g., Portsmouth Redevelopment and Housing Authority v. Pierce*, 706 F.2d at 475; *Schulthess v. United States*, 694 F.2d 175, 179 (9th Cir.1982); *Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971, 974 (5th Cir. 1981); *cf. Tafoya v. Department of Justice*, 749 F.2d at 1393; *State of New Mexico v. Regan*, 745 F.2d at 1323; *Keller v. Merit Systems Protection Board*, 679 F.2d 220, 223 (11th Cir.1982).

IT IS SO ORDERED.

12. Section 1631 provides as follows:
    Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.
    28 U.S.C. § 1631.