**David V. ADAMSON, Plaintiff,**

v.

**Donald RADOSEVIC, Chief, Real Estate Division, Corps of Engineers, Department of Army, and United States of America, Defendants.**

Civ. A. No. 87–2105.

United States District Court,
D. Kansas.

March 21, 1988.

Carston C. Johannsen, Thomas L. Thurston, Perry & Hamill, Overland Park, Kan., for plaintiff.

Benjamin L. Burgess, Jr., U.S. Atty., Robert A. Olsen, Asst. U.S. Atty., Kansas City, Kan., Jane Cornwell, Corps of Engineers, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Plaintiff, David V. Adamson, brought this action for declaratory and injunctive relief pursuant to 5 U.S.C. §§ 702, 703 and 28 U.S.C. §§ 1331, 1346. This action arises from various leases entered into by the Army Corps of Engineers with several motel and apartment complexes in the Leavenworth, Kansas area. A hearing was held on plaintiff's request for a preliminary injunction.[1] Subsequently, the defendants filed a motion to dismiss or for summary judgment on the ground that this court lacks subject matter jurisdiction over plaintiff's claims.

At the preliminary injunction hearing, various exhibits were admitted into evidence. In addition, the defendants' motion was accompanied by documents which are not part of the pleadings. Due to the presence of these "extraneous" exhibits, the defendants' motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b).

According to the federal rules, summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This can be done when the moving party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* 106 S.Ct. at 2553. Once the moving party has met these requirements, the burden then shifts to the party resisting the motion. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate when the non-moving party cannot set forth specific facts supporting the essential elements of his or her claim. *Celotex*, 106 S.Ct. at 2552–53. In considering a motion for summary judgment, however, the court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Prod. Co.*, 639 F.2d 671, 672 (10th Cir.1981).

The uncontroverted facts are as follows. On April 27, 1984, the defendant Army Corps of Engineers [hereinafter "the Corps"] submitted to Congress Real Estate Acquisition Report No. 540. In this report, the Corps requested authority pursuant to 10 U.S.C. § 2662 to lease rooms in the area of Fort Leavenworth, Kansas. These rooms were to serve as temporary quarters for unaccompanied officers assigned to Fort Leavenworth's Combined Arms Services Staff School (CAS3). According to the acquisition report, the CAS3 was a nine-week concentrated academic course designed to train officers in standardized staff procedures and doctrinal concepts incident to the employment of combined arms at the battalion, brigade and division level. The acquisition report noted that construction of additional unaccompanied officers quarters on the military base was proposed; funds for this construction were included in the budgets for fiscal years 1984 and 1985. The leases proposed in Acquisition Report No. 540 were to provide interim quarters pending the construction of on-base housing. On June 20, 1984, the House of Representatives' Armed Services Committee approved the Corps' request to proceed with various "real estate projects," including Acquisition Report No. 540.

1. Since the hearing, plaintiff has indicated that he wishes to consolidate his request for preliminary and permanent injunctive relief. Therefore, this order will only address the jurisdictional issues raised by the defendants.

On December 26, 1984, the Corps issued Solicitation No. 135, Solicitation for Proposals, Lease of Space to the United States of America. The solicitation noted that the Corps needed 300 "residential" units with a maximum of two persons per unit. Each unit was required to have separate bathroom facilities, daily maid service, separate desks or study areas and adequate parking. The units were also required to be within walking distance of dining facilities. The solicitation also stated that the initial term of the lease would be for one year (October 1, 1985, to September 30, 1986) with the option of a one-year renewal of all or part of the units. Finally, the solicitation provided that the all or part of the lease could be terminated by the government on fifteen days written notice.

Plaintiff submitted a proposal to lease space pursuant to Solicitation No. 135 on January 30, 1985, on behalf of the Cody Motor Inn in Leavenworth. Eighteen other proposals were received by the Corps in response to Solicitation No. 135. Four of these proposals were accepted, including plaintiff's. While the leases commenced on different dates, all the leases expired on September 30, 1986, unless renewed. The proposals selected for the CAS3 quarters included:

| Name | Number of Units | Price per Day | Date of Lease |
|---|---|---|---|
| Cody Motor Inn | 36 | $16.00 | 6/25/85 |
| Magnolia Manor | 276 | $15.00 | 6/25 & 26/85 |
| Condotels, Inc. | 51 | $17.00 | 7/29/85 |
| Lewis Management | 40 | $14.00 | 9/20/85 |

The Corps negotiated leases with the four successful bidders. The leases finally executed by the government and the bidders were somewhat different than the terms originally set forth in the solicitation. For example, the leases entered into by the parties contained a bilateral termination clause giving *either* party the right to terminate the lease on thirty days (rather than fifteen) written notice. Furthermore, while the solicitation provided for termination or renewal of the leases as to all or part of the units, the final leases were silent as to partial termination or renewal.

During the first year of the leases—October 1, 1985, to September 30, 1986—construction of on-post housing for the CAS3 officers continued as described in the Corps' original acquisition report to Congress. Near the end of the first year, the government exercised its options and renewed all the leases for another year. In late 1986 or early 1987, the Corps determined that some of the on-post housing would be completed in early 1987, thereby reducing the off-post housing needs. On January 5, 1987, the Corps notified all CAS3 officers living in the leased units that the leases were to be terminated effective March 11, 1987, and that they should make special arrangements if they needed to stay beyond that date. Plaintiff was aware of this notice.

On January 16, 1987, the Corps received a request from Fort Leavenworth personnel to cancel all of the lease agreements except those necessary to retain 264 off-base units. The correspondence indicated that after a meeting of Corps and base personnel, they concluded that it was undesirable to lodge CAS3 students in diverse locations because of inefficient shuttle bus operations, transportation costs and various stress and morale problems imposed on the officers. The letter indicated that the housing needs for 264 units could be satisfied by a single off-post housing complex, Magnolia Manor. For these reasons, Fort Leavenworth requested that all the leases, except for 264 units at Magnolia Manor, be terminated. On January 28, 1987, plaintiff's counsel delivered to the Corps a written protest objecting to the pending terminations.

On February 2, 1987, base and Corps personnel met to discuss the January 16 request to terminate the leases. Fort Leavenworth personnel were required to prepare cost studies to supplement the base's recommendation. On February 4, 1987, a meeting with all leaseholders was held. At the meeting and in a letter dated February 5, 1987, plaintiff and other leaseholders requested the Corps to terminate units on a pro rata basis between the four leaseholders.

A detailed cost analysis was conducted under the supervision of Ralph Yaple, an employee of the Corps. This analysis re-

viewed seven different options available to the government to reduce the number of units leased. This data, with various corrections, was submitted to the Corps. Plaintiff vigorously disputes the accuracy and reliability of this information. Subsequently, the Corps terminated all leases except two at Magnolia Manor. Plaintiff's lease was terminated by the Corps on February 11, 1987. Various protest letters were sent to the Corps. Plaintiff then filed a protest with the General Accounting Office (GAO). On March 10, 1987, plaintiff filed this action. Since then, the GAO has rendered decisions on appeals filed by the other terminated lessors; the GAO found the terminations to be reasonable.

In its motion for summary judgment, the defendants contend that this court lacks subject matter jurisdiction over plaintiff's claims. In his complaint, plaintiff bases jurisdiction on 5 U.S.C. §§ 702, 703 and 28 U.S.C. § 1331. Defendants assert that neither of these statutes provide an independent basis for subject matter jurisdiction or a waiver of sovereign immunity. Finally, the government argues that plaintiff's action is really a claim for monetary damages, which falls within the exclusive jurisdiction of the Court of Claims under the Tucker Act, 28 U.S.C. § 1491.

Our first task is to determine whether plaintiff's complaint, as framed, sufficiently pleads a basis for subject matter jurisdiction. One basis of jurisdiction asserted by the plaintiff is section 702 of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (APA). The United States Supreme Court expressly has held that the APA does not create an implied grant of subject matter jurisdiction permitting federal judicial review of agency action. *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977); *Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir.1980), *aff'd,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). However, section 702 has been interpreted to constitute a limited waiver of sovereign immunity in suits reviewing agency action which seek relief other than monetary damages. *State of New Mexico v. Regan,* 745 F.2d 1318, 1321 n. 3 (10th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985).

While section 702 of the APA may waive the government's sovereign immunity in actions for injunctive or declaratory relief, an independent source of subject matter jurisdiction must exist. *Choctaw Mfg. Co., Inc. v. United States,* 761 F.2d 609, 615 (11th Cir.1985). Plaintiff also cites 28 U.S.C. § 1331 as a jurisdictional basis. This section provides: "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." While this statute gives federal courts jurisdiction over cases "arising under" federal law, it does not itself create jurisdiction in the district courts. *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 823 (10th Cir.1981). However, the 1976 amendments to section 1331 [2] confer jurisdiction on federal courts to review the actions of federal agencies, subject only to preclusion-of-review statutes enacted by Congress. *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977); *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown,* 656 F.2d 564, 566 n. 5 (10th Cir.1981). Furthermore, plaintiff alleges in his complaint that the Corps failed to comply with 10 U.S.C. § 2304, the Competition in Contracting Act. On these grounds, the court finds that on the face of plaintiff's complaint, we have subject matter jurisdiction of his claims as plaintiff's claims "arise under" federal law.

The defendants argue, however, that plaintiff's action is only "disguised" as one for declaratory and injunctive relief. The government asserts that plaintiff's claim is, in reality, seeking monetary damages for an alleged wrongful termination of his lease. Since his action really is a

---

**2.** In 1976, Congress amended 28 U.S.C. § 1331 eliminating the requirement of a specified amount in controversy in "any action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Pub.L. 94–574, 90 Stat. 2721. *Califano v. Sanders,* 430 U.S. at 105, 97 S.Ct. at 984.

contract action for money damages, the defendants argue that exclusive jurisdiction is vested with the Court of Claims under the Tucker Act, 28 U.S.C. § 1491.[3]

The Tenth Circuit has repeatedly recognized that district court jurisdiction under 28 U.S.C. § 1331 does not extend to suits that must be brought exclusively in the Court of Claims. *United States v. City of Kansas City, Kansas,* 761 F.2d 605, 607–08 (10th Cir.1985); *Alamo Navajo School Bd., Inc. v. Andrus,* 664 F.2d 229, 233 (10th Cir.1981), *cert. denied,* 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982). The Tenth Circuit also has been careful to protect the Court of Claims' jurisdiction under the Tucker Act by closely scrutinizing plaintiffs' complaints to determine if the real relief sought is monetary. It has held that "[t]he exclusive jurisdiction of the Court of Claims cannot be avoided by framing a district court complaint to appear to seek only injunctive, mandatory, or declaratory relief." *Alamo Navajo School Bd., Inc. v. Andrus,* 664 F.2d at 223. *See also Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 824 (10th Cir.1981).

Thus, the existence of this court's subject matter jurisdiction turns on whether plaintiff's claim is really one for monetary damages or for injunctive/declaratory relief. The ultimate characterization of plaintiff's claims affects this court's jurisdiction in two distinct ways: (1) the statutory basis of jurisdiction; and (2) sovereign immunity. If plaintiff's action is one for monetary damages exceeding $10,000, the Court of Claims has exclusive jurisdiction. 28 U.S.C. § 1491. For matters outside the scope of the Tucker Act, section 1331 gives district courts jurisdiction to review agency action. *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). This issue also affects sovereign immunity. The waiver of sovereign immunity in section 702 of the APA has been construed as a consent of the United States to be sued in cases involving agency action,

as long as the action is not one for monetary damages. *State of New Mexico v. Regan,* 745 F.2d 1318, 1321 (10th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2038, 85 L.Ed.2d 496 (1985). In addition, Congress has waived sovereign immunity with respect to certain claims for money damages by limiting jurisdiction to hear such claims to the Court of Claims in most circumstances. *United States v. City of Kansas City, Kan.,* 761 F.2d 605, 607 (10th Cir.1985).

Needless to say, the parties do not agree as to the correct characterization of plaintiff's claims in this action. The government argues that plaintiff is, in reality, bringing an action for monetary damages for the purportedly wrongful termination of his lease. The defendants rely on a series of Tenth Circuit cases where the court found that claims made against the United States, although pled as injunctive or declaratory judgment claims, were actually claims for money damages within the purview of the Tucker Act. *See, e.g., United States v. City of Kansas City, Kan.,* 761 F.2d 605 (10th Cir.1985); *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818 (10th Cir.1981); *Alamo Navajo School Bd., Inc. v. Andrus,* 664 F.2d 229 (10th Cir. 1981), *cert. denied,* 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982). The plaintiff, on the other hand, asserts that his claim is substantially similar to actions brought by unsuccessful bidders against agencies who award a contract to another bidder. *See, e.g., Choctaw Mfg. Co., Inc. v. United States,* 761 F.2d 609 (11th Cir.1985); *B.K. Instrument, Inc. v. United States,* 715 F.2d 713 (2d Cir.1983). To resolve this dispute, the court must review the precedent cited by the parties.

The first case cited by the defendants finding a "disguised" claim under the Tucker Act is *Alamo Navajo School Bd., Inc. v. Andrus,* 664 F.2d 229 (10th Cir.1981). In *Alamo,* the plaintiff school board brought

---

**3.** This Act provides, in part:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491.

suit against the Bureau of Indian Affairs (BIA). The plaintiff sought an injunction compelling the BIA to turn over $134,-833.00 from a a special contingency fund. The Tenth Circuit found that the district court did not have jurisdiction over the claim under 28 U.S.C. § 1331. *Id.* at 233. Instead, the appellate court found that the Board, in essence, was seeking money damages and that the damages could only be calculated by reference to the contract between the BIA and the school board. *Id.* For this reason, the court determined that the Board's claims fell within the Tucker Act, 28 U.S.C. § 1491, and the exclusive jurisdiction of the Court of Claims. *Id.*

The second time this issue was addressed by the Tenth Circuit was in *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818 (10th Cir.1981). The plaintiffs in this action, various sugar beet processors, brought a declaratory judgment suit against the Secretary of the Department of Agriculture. The plaintiffs requested a declaration that the Department erroneously determined that certain sugar owned by plaintiffs was ineligible for loans under a 1977 price support program. Plaintiff's counsel conceded that the sugar companies' ultimate goal was to recover $700,000 in storage costs from the agency and that the request for declaratory judgment was the first step in recovering these costs. *Id.* at 822. Since the only controversy was for the storage costs, the appellate court determined that the claim was within the scope of the Tucker Act and the district court lacked subject matter jurisdiction. *Id.* at 823-24.

The Tenth Circuit was again faced with the issue in *United States v. City of Kansas City, Kan.*, 761 F.2d 605 (10th Cir. 1985). In this case, the Environmental Protection Agency (EPA) brought an action against the City of Kansas City, Kansas, under the Federal Water Pollution Control Act. The City filed a counterclaim against the EPA for over $2,000,000 in grant money, plus attorney's fees and costs under the Act. Eventually, the EPA's claims were resolved by a consent decree. Subsequently, the district court awarded attorney's fees to the City and the EPA appealed. *Id.* at 606.

On appeal, the EPA argued that the City's counterclaim was for monetary damages and therefore was not within the district court's jurisdiction. While the pleadings indicated a request for damages, the district court determined that the City was actually seeking injunctive relief. *Id.* at 608. The appellate court held that the City's aim—at the onset of the suit and at the time the issues were submitted to the court for summary judgment—was to obtain grant money from the EPA. *Id.* For this reason, the City's counterclaim was outside the district court's jurisdiction. *Id.* at .608–09.

The most recent Tenth Circuit case on "disguised" Tucker Act claims is *Rogers v. Ink*, 766 F.2d 430 (10th Cir.1985). In *Rogers*, a state organization which provided assistance to low income residents brought an action challenging the government's refusal to fund the organization's entire 1981 program year. The plaintiffs had requested a declaration that the government's funding actions violated due process and an injunction requiring the defendants to keep funds available to the plaintiff. The district court ruled on the merits in favor of the defendants. *Id.* at 433–34. Again, the Tenth Circuit held that when the "prime objective" of the plaintiff was "to obtain money from the federal government (in an amount in excess of $10,000), the Claims Court's exclusive jurisdiction was triggered." *Id.* at 434. The court found that the underlying purpose of the action was to obtain federal funds to which plaintiffs claimed entitlement. *Id.* Consequently, the district court's decision on the merits was vacated due to lack of jurisdiction.

In determining whether a complaint for declaratory and/or injunctive relief is a "disguised" Tucker Act claim, the Tenth Circuit has applied a "prime objective or essential purpose" test. *See Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir.1985); *State of New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied*, 471 U.S. 1065,

105 S.Ct. 2138, 85 L.Ed.2d 496 (1985).[4] After carefully examining the cases cited by the government and the record, we find that this case is clearly distinguishable from the *Rogers* decision and its predecessor cases. A practical reading of plaintiff's complaint leads us to only one reasonable conclusion: that the primary objective of plaintiff's action is to obtain declaratory and injunctive relief rather than monetary damages. Plaintiff requests a declaration that the Corps violated the Competition in Contracting Act, 10 U.S.C. § 2304, when they failed to solicit new bids for the reduced housing needs of CAS3 officers. Plaintiff also requests that the Corps be enjoined from "awarding" the lease to Magnolia Manor and be compelled to issue a solicitation for bids on the project. While not addressing the merits of plaintiff's claims, we find that they are bona fide claims for nonmonetary relief. Unlike the *Rogers* line of cases, plaintiff is not directly or indirectly seeking funds from the government; he is only seeking an opportunity to submit a bid on the CAS3 leases.

The court notes that plaintiff's claim that a new solicitation was required was based on the fact that his lease was terminated. However, that fact alone does not make this a claim for wrongful termination. If we accepted the government's interpretation of this situation, military agencies could avoid enforcement of the Competition in Contracting Act by submitting solicitations for bids on projects, entering into multiple contracts which contain termination clauses and then terminating all the contracts but one. Under the defendant's view of the law, the contractors whose agreements were terminated could never enforce the competitive bidding statute; their sole remedy would be for damages for wrongful termination in the Court of Claims. The court finds that this result is antithetical and contrary to the reasoning in *Rogers* and other Tenth Circuit decisions. Should plaintiff prevail on the merits of this claim, it would only entitle him to an opportunity to bid on a government contract; nothing in the case would entitle him, directly or indirectly, to monetary relief.

The government also emphasizes that the plaintiff has since filed an action with the Court of Claims arising from the same transaction or occurrence at issue here. However, the mere filing of such a claim does not convert this action into one for monetary damages. The government cites to no authority which prohibits a party from seeking both equitable and monetary relief from the government due to the alleged wrongs of government agencies. Nor does the government cite to any authority supporting the contention that the filing of the action in the Court of Claims deprives this court of jurisdiction over plaintiff's claims for declaratory and injunctive relief.

The court finds that plaintiff's claims are more analogous to claims filed by unsuccessful bidders on government contracts which seek to enforce competitive bidding laws.[5] The federal courts have explicitly recognized that the district courts have jurisdiction to enjoin the performance of a government contract "if the award was the result of procedures not comporting with the law." *Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d 609, 619 (11th Cir.1985). For all these reasons, the court finds that we have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and that plaintiff's claims do not fall within the Tucker Act. Therefore, the defendants' motion to dismiss must be denied.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss for lack of

---

4. Tests similar to the "prime objective" standards have been followed by courts outside the Tenth Circuit. *See, e.g., Fairview Township v. United States Environmental Protection Agency,* 773 F.2d 517, 528 (3d Cir.1985); *Portsmouth Redev. & Housing Auth. v. Pierce,* 706 F.2d 471, 474 (4th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981). At least one circuit appears to apply a different test. *See Maryland Dept. of Human Resources v. Department of Health & Human Serv.,* 763 F.2d 1441 (D.C.Cir.1985).

5. Neither defendant has contested plaintiff's standing to bring this action. Most "bidding" cases are brought by contractors who actually submitted bids on a project.

subject matter jurisdiction or for summary judgment is hereby denied.