**EAGLE–PICHER INDUSTRIES, INC., Plaintiff–Appellee,**

v.

**UNITED STATES of America; John S. Herrington, Secretary of the Department of Energy; Peter D. Dayton, Director, Procurement and Contracts Division, Department of Energy, Oak Ridge, Tennessee, Defendants–Appellees,**

**Appeal of CERADYNE, INC., Applicant-in-Intervention.**

**No. 89–5058.**

United States Court of Appeals, Tenth Circuit.

April 30, 1990.

Wallace, Owens, Landers, Gee, Morrow, Wilson, Watson, James & Coiner, Miami, Okl. and Philip Chung, Spriggs & Hollingsworth, Washington, D.C., with him on the briefs), for plaintiff-appellee.

Jacob D. Vreeland, Atty., Dept. of Energy, Washington, D.C. (Tony M. Graham, U.S. Atty., Peter Bernhardt, Asst. U.S. Atty., Tulsa, Okl., on the brief), for defendants-appellees.

Douglas L. Inhofe, Conner & Winters, Tulsa, Okl. (G.W. Turner III, Conner & Winters, Tulsa, Okl., and Paul L. Gale, Stradling, Yocca, Carlson & Rauth, Newport Beach, Cal., with him on the briefs), for applicant-in-intervention.

Before ANDERSON and BALDOCK, Circuit Judges, and GREENE,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This appeal is taken from the denial of a motion to intervene filed by Ceradyne, Inc., in an action brought by Eagle–Picher Industries, Inc., against the United States. Because we find that the district court lacked subject-matter jurisdiction over Eagle–Picher's claim, we do not reach the merits of Ceradyne's efforts to intervene.

Martin Marietta Energy Systems, Inc., manages, as an agent of the federal government, a facility for the United States Department of Energy (DOE) in Oak Ridge, Tennessee. When it procures supplies for the facility, Martin Marietta must abide by the DOE's acquisition regulations. This dispute arose when Martin Marietta solicited bids on a certain project, and awarded the contract to Eagle–Picher. Ceradyne, which also had bid on the project, lodged a protest. The DOE decided that corrective action was warranted, and ordered Martin Marietta to suspend the contract with Eagle–Picher and resolicit bids on the project. In response, Eagle–Picher filed suit in the United States District Court for the Northern District of

William J. Spriggs, Spriggs & Hollingsworth, Washington, D.C. (Coy Morrow,

---

* The Honorable J. Thomas Greene, U.S. District Court for the District of Utah, sitting by designation.

Oklahoma against the United States of America and certain officials of the DOE, seeking to enjoin the suspension and resolicitation of the contract.

■ Jurisdiction was invoked under the Administrative Procedure Act (APA), especially 5 U.S.C. § 702, and the general federal question statute, 28 U.S.C. § 1331. However, the APA does not create an independent basis of jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105–07, 97 S.Ct. 980, 984–85, 51 L.Ed.2d 192 (1977). Also, jurisdiction over a suit against the United States cannot be based upon 28 U.S.C. § 1331, because that statute does not waive the government's sovereign immunity and the waiver of sovereign immunity in the APA does not extend to actions founded upon a contract with the United States, which are governed by the Tucker Act. *New Mexico v. Regan*, 745 F.2d 1318, 1321–22 (10th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822–23 (10th Cir.1981).

■ Under the Tucker Act, as amended by the Contract Disputes Act of 1978, the Claims Court has exclusive jurisdiction over any suit against the United States which is "founded upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(1); S.Rep. No. 1118, 95th Cong., 2d Sess. 33 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5267. The contract in question is "with the United States" because Martin Marietta acted as an agent of the DOE. *See United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed.Cir.1983).

■ "A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States."

*Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir.1985); *accord Colorado Dep't of Highways v. United States Dep't of Transp.*, 840 F.2d 753, 755 (10th Cir.1988); *United States v. City of Kansas City, Kansas*, 761 F.2d 605, 608–09 (10th Cir.1985); *New Mexico v. Regan*, 745 F.2d at 1322; *Amalgamated Sugar Co. v. Bergland*, 664 F.2d at 824; *Alamo Navajo School Board, Inc. v. Andrus*, 664 F.2d 229, 233 (10th Cir.1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982). The test for determining if a case belongs in the Claims Court is whether or not "the 'prime objective' or 'essential purpose' of the complaining party is to obtain money from the federal government." *New Mexico v. Regan*, 745 F.2d at 1322; *accord Rogers v. Ink*, 766 F.2d at 434.[1]

Situations in which the prime objective of the plaintiff was to obtain money from the government include an effort to enjoin the denial of a federal grant, *United States v. City of Kansas City, Kansas*, 761 F.2d at 608; a challenge to the accounting method used to calculate federal reimbursement of highway construction costs, *Colorado Dep't of Highways v. United States Dep't of Transp.*, 840 F.2d at 756; a prayer for a declaration of eligibility for the continuation of certain agricultural loans, *Amalgamated Sugar Co. v. Bergland*, 664 F.2d at 823; and, a challenge to a decision not to fund local anti-poverty organizations, *Rogers v. Ink*, 766 F.2d at 434.

Eagle–Picher seeks to distinguish the above decisions and relies upon *Adamson v. Radosevic*, 685 F.Supp. 814 (D.Kan. 1988). This reliance is misplaced. In *Adamson*, the Army Corps of Engineers leased 403 motel rooms from four different contractors, with 276 of those rooms being in the Magnolia Manor. The Corps later decided that it only need 264 rooms. Instead of soliciting bids for a new contract for 264 rooms, the Corps terminated its

---

1. It could be argued that the "prime objective" test is inconsistent with *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988), which held that judicial review of an administrative decision disallowing a state's claim for Medicaid reimbursement is not a claim for "money damages" (and therefore is permitted by 5 U.S.C. § 702), even though it could result in a judgment which forces the federal government to pay money. Unlike the cases discussed above and the present action, however, the claim in *Bowen* did not relate to a government contract. *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 5 (1st Cir.1989). Such cases must be filed in the Claims Court.

leases with each contractor except the Magnolia Manor. One of the other contractors brought suit to compel the solicitation of new bids. Because the plaintiff was not trying to force the Corps to perform a contract, but sought only a chance to bid on one, his prayer for an injunction was not a disguised contract claim:

"Unlike the *Rogers* line of cases, plaintiff is not directly or indirectly seeking funds from the government; he is only seeking an opportunity to submit a bid on the [new contract].... Should plaintiff prevail on the merits of this claim, it would only entitle him to an opportunity to bid on a government contract; nothing in the case would entitle him, directly or indirectly, to monetary relief."

*Id.* at 820.

In contrast, were Eagle–Picher to prevail on the merits of its claim, it *would* be indirectly entitled to monetary relief, because the practical effect of such an injunction would be to force the government to abide by the contract. *See S.J. Groves & Sons Co. v. United States*, 495 F.Supp. 201, 206–08 (D.Colo.1980). Whereas the plaintiff in *Adamson* sought to bring about a resolicitation of bids, Eagle–Picher seeks to prevent the resolicitation of bids. The plaintiff in *Adamson* would experience no monetary gain from a favorable judgment, but a judgment in favor of Eagle–Picher would result in Eagle–Picher receiving money from the federal government pursuant to the contract. Because Eagle–Picher's prime objective in this litigation is to force the federal government to perform the contract, i.e., to pay money to Eagle–Picher, this action should have been brought in the Claims Court.[2]

The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

---

**2.** On a claim similar to the one at bar, the court in *Vibra–Tech Engineers, Inc. v. United States*, 567 F.Supp. 484 (D.Colo.1983), reached the opposite result. That opinion is flawed, however, in that it fails to apply the "prime objective" test. *See id.* at 487. Accordingly, it cannot be considered an authoritative application of the law.