**HAMILTON STORES, INC.,**
**Plaintiff–Appellant,**

**v.**

**Donald HODEL, Secretary, Department of the Interior; William Mott, Director, National Park Service; Lorraine Mintzmeyer, Regional Director, Rocky Mountain Region, National Park Service; Robert D. Barbee, Superintendent, Yellowstone National Park, Defendants–Appellees.**

**No. 86–1376.**

United States Court of Appeals,
Tenth Circuit.

Feb. 11, 1991.

Francis J. Nielson, Arnovitz, Smith & Nielson, Salt Lake City, Utah, for plaintiff-appellant.

Robert L. Klarquist, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C. (David C. Shilton, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., with him on the brief); F. Henry Habicht II, Asst. Atty. Gen., Richard A. Stacy, U.S. Atty., and Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo. (of counsel: Lars A. Hanslin, Office of the Sol., Dept. of the Interior, Washington, D.C., with him on the brief), for defendants-appellees.

Before HOLLOWAY, Chief Judge, LOGAN and SEYMOUR, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiff-appellant Hamilton Stores, Inc. ("HSI"), a Delaware corporation, commenced this suit against the Secretary of the Interior ("the Secretary" or "the government") and other officials of the Department of the Interior in the United States District Court for the District of Wyoming. The dispute concerns the alleged failure of the Secretary to honor HSI's contractual and statutory rights as a concessioner providing various visitor services in Yellowstone National Park pursuant to a long-term contract with the National Park Service ("NPS"), an agency of the Interior Department. The district court granted summary judgment for the Secretary and dismissed HSI's cause with prejudice. *Hamilton Stores, Inc. v. Hodel*, No. C85–0378–81 (unpublished order). The principal issues on appeal are (1) whether the district court had jurisdiction to consider HSI's claims for injunctive, mandamus, and declaratory relief, and (2) whether the court appropriately entered summary judgment for the federal defendants.

I

The Secretary of the Interior, acting through the Director of the National Park Service, is empowered to enter into contracts with private concessioners selected to provide visitor services in the national parks. *See* National Park Service Act of 1916, 16 U.S.C. 3; Concessions Policy Act of 1965, 16 U.S.C. 20, *et seq.* The NPS entered into such a concession contract (Contract No. 14–10–9–900–227) with the Yellowstone Park Company ("YPC") in 1966 ("1966 contract"). This contract with YPC authorized the company to provide a broad range of services to Yellowstone National Park visitors.[1] In April of 1970 the

1. Section 2 of the 1966 YPC contract provided:
    (a) The Secretary authorizes the Concessioner during the term of this contract [10/1/66–9/30/96], to provide for the public
    
    within Yellowstone National Park the following:
    (1) Lodging accommodations.
    (2) Food and beverage service facilities.

NPS entered into another concession contract (Contract No. 14–10–9–9–990–2) with HSI ("1970 contract"), authorizing HSI to provide a substantially similar list of services within Yellowstone National Park.[2] Both the 1966 YPC contract and the 1970 HSI contract also contain substantially similar "preferential right" provisions[3] giving the concessions qualified rights of first refusal[4] regarding "new or additional accommodations, facilities or services" of the type authorized to be provided under the 1966 and 1970 contracts. The term "new or additional accommodations, facilities or services" is not defined in the concession contracts, nor in the applicable statutes and regulations. However, both the 1966 YPC contract and the 1970 HSI contract contain the following provision (Section 16(b)) relating to existing and/or potential competitors:

> Nothing contained in this section or elsewhere in this contract shall be construed as prohibiting or curtailing operations now authorized by the Secretary to provide accommodations therein for the public. This subsection shall also include the successors or assigns of such concessioners, when approved by the Secretary.

1966 YPC Contract at 16; 1970 HSI Contract at 17.

In 1979 the NPS declared YPC to be an unsatisfactory concessioner, revoked its au-

---

(3) Boating facilities and services.
(4) Transportation facilities and services.
(5) Automobile service stations.
(6) Campers' service facilities.
(7) Any and all services and merchandising which are necessary in connection with the above operations.

**2.** Section 2(a) of the 1970 contract with HSI states:

> (a) The Secretary authorizes the Concessioner, during the term of this contract [10/1/69–9/30/99], to provide accommodations, facilities, and services for the public within Yellowstone National Park, as follows:
> (1) Merchandising, including but not limited to stores, shops, and other units for the sale of:
> Groceries, meats, and other foodstuffs; bakery products; liquor, wine, beer and other beverages; sporting goods and equipment including fishing tackle sales and rental; clothing and shoes; proprietary drugs, cosmetics and sundries; hardware and furniture; curios, gifts, souvenirs, handicrafts, books, etc.; smokers' supplies; general merchandise, etc.; but excluding prescriptive drugs, and medical appliances or supplies.
> (2) Food and beverage service as follows: In its merchandising units wherever located, soda fountains, and service of soft drinks, ice sales, light lunches, beer and other refreshments; and such other services as may be specifically approved by the Secretary, *not in conflict with other existing contracts.*
> (3) Automobile service stations.
>      *    *    *    *    *    *
> (7) All facilities, service, and operations *necessary to or customary in connection with,* any of the above described operations.
> (b) *The Secretary reserves the right to determine and control the nature and type of merchandise and services which may be sold or furnished by the Concessioner within the Park.*

1970 HSI Contract at 6 (emphasis added).

**3.** Section 16 of the 1966 YPC contract reads in pertinent part:

> *Preferential Right.* (a) The Concessioner is granted a preferential right, *not an exclusive or monopolistic right,* to provide public accommodations, facilities, and services in the park *of the character authorized hereunder.* The Secretary will request the Concessioner to provide such new or additional accommodations, facilities, or services, of the same character as the Secretary may consider necessary or desirable for the accommodation and convenience of the public. * * * *

Contract No. 14–10–9–900–227 (emphasis added).

**4.** The terms "right of preference" and "preferential right" are defined in regulations promulgated by the Secretary in 1979, 44 Fed.Reg. 62,895 (1979), pursuant to 16 U.S.C. § 3, *et seq.,* and 16 U.S.C. § 10, *et seq.:*

> § 51.3 Definitions.
>    *    *    *    *    *    *
> (b) "Right of Preference" refers to the right of existing satisfactory concessioners to a preference in the renewal or negotiation of a new contract or permit covering *substantially the same accommodations, facilities and services as provided by the concessioner under the terms of its existing contract or permit.* Prior to the expiration or termination of a contract or permit a determination shall be made based on annual evaluations, as to whether or not the concessioner is entitled to a preference in the renewal of its contract or permit. An unsatisfactory rating, results in the loss of the right of preference.
> (c) "Preferential Right" refers to the right to provide new or additional services and facilities which may be granted to a concessioner by Concession Contract as the Director may consider necessary for the accommodation and convenience of the public.

thority to provide facilities and accommodations earlier permitted, terminated NPC's contractual relationship with YPC, and began searching for a concessioner to replace YPC. *Brief of Appellant* at 7. To facilitate the search, NPS issued a prospectus in August of 1979 soliciting offers from all qualified bidders for a two-year interim contract[5] for "the concession currently operated by the Yellowstone Park Company." *1979 Prospectus* at 1. Shortly after the issuance of the 1979 Prospectus, NPS and HSI officials negotiated and executed a "Memorandum of Understanding" ("MOU") clarifying the scope of the respective rights of HSI and YPC's "successor" to sell certain types of gifts in Yellowstone National Park. *MOU* at 1.

The parties to the August 1979 MOU expressly stipulated that: "[i]t was agreed that the language authorizing gift operations in each of the applicable current contracts did not duplicate or conflict with either parties [sic] contract authorization." *Id.* HSI was provided with a copy of the prospectus, but HSI did not submit a proposal, and the interim contract was awarded to a third company, TWA Services, Inc. ("TWS"), effective November 1, 1979 and covering the period through October 31, 1981. *Brief of Appellant* at 11.

In June of 1981 the NPS issued another prospectus inviting bids for the long-term operation of the concession then being operated by TWS under the 1979 interim contract. Again HSI did not bid for the concession and in February of 1982, the NPS and TWS entered into a five-year renewable contract (Contract No. CC 1570-2-

0001), authorizing TWS to continue operating the concession it had begun operating in 1979.

It is HSI's position that the process by which the Secretary awarded the 1979 contract to TWS violated the Department of the Interior's regulations governing awards of national park concession contracts.[6] More specifically, HSI claims that the Secretary illegally solicited and awarded the 1979 contract to TWS pursuant to the procedures outlined in 36 C.F.R. § 51.4 (1989) ("Solicitation and award of concession contracts and permits where no right of preference exists."), when the NPS was legally obligated to follow the procedures set forth in 36 C.F.R. § 51.6 (1980) ("Preferential right for additional services where a right to additional services and facilities exists by specific contract provisions.").[7] *Brief of Appellant* at 8.

HSI argues that in 1978 and subsequently it has consistently complained about encroachments on its contract rights by a new gift shop's operations at Grant Village. *Brief of Appellant* at 11. It says that there were encroachments by TWS and the NPS. HSI's affidavit from Mr. Povah detailed expanding operations in the areas of merchandising, food and beverage service, automobile service stations, studio shops and stands selling pictorial souvenirs, maps and recordings. *Id.* at 12. On August 11, 1982, HSI wrote a letter to the NPS alleging that a gift shop to be built at Grant Village and operated by TWS would encroach on HSI's exclusive contract rights, and that the prospectus on which the TWS contract was based had provided

---

36 C.F.R. § 51.3 (emphasis added).

**5.** It is undisputed that the NPS complied with the regulatory procedure mandated by 36 C.F.R. § 51.4 (1989) when it sought a concessioner for the 1979 interim contract.

**6.** 36 C.F.R. §§ 51.1–51.7 (1980).

**7.** 36 C.F.R. § 51.6 (1980) provided in part:
*Where the Director seeks to authorize new or additional accommodations, facilities and services of generally the same character as provided by an existing satisfactory concessioner in a park area, and such concessioner by Concession Contract has a right to provide such additional services, the Director shall develop*

*a description of the new or additional services and the terms and conditions upon which they are to be provided without reference to any private party and give the existing concessioner a reasonable opportunity to review such description to determine if it wishes to provide the services.* If so, the Director shall authorize the additional services by amendment to the concessioner's contract. If the existing concessioner does not agree to provide the additional services upon the terms and conditions described, the Director shall authorize additional services to be provided by a new concessioner under substantially the same terms and conditions and pursuant to the procedures of § 51.4 hereof.
(Emphasis added.)

the concessioner would be limited to operating gift shops in its lodging facilities. *Brief for Federal Appellees* at 14.

## II

HSI initially filed an action in the District of Wyoming against the Secretary for damages pursuant to the Federal Tort Claims Act in 1985. The tort claims suit was dismissed without prejudice for lack of jurisdiction. Later HSI attempted to file with the NPS an administrative claim for damages under the Contract Disputes Act, 41 U.S.C. § 602, *et seq.*, but the filing was rejected for failure to comply with the certification requirements of § 605(c)(5) of the Act. Several months later, HSI filed a suit in the United States District Court for the District of Montana for injunctive and declaratory relief. The Montana suit was dismissed without prejudice for improper venue.

In September of 1985 HSI filed the instant suit in the District of Wyoming seeking (1) an injunction barring NPS interference with the company's statutory and contractual rights under 16 U.S.C. § 20c and 36 C.F.R. § 51.6; (2) a writ of mandamus directing the Secretary and his agents to rescind its contract with TWS and to offer HSI the opportunity to provide the "new or additional accommodations, facilities and services" that are being performed by TWS; (3) a declaration of the rights and duties of HSI and the Secretary under the relevant contractual, statutory, and regulatory provisions; and (4) attorneys' fees under the Equal Access to Justice Act.

Finding no violation of HSI's contractual rights, nor any illegal action by the Secretary, the district court granted summary judgment for the defendants and dismissed HSI's suit with prejudice in its unpublished order. The court concluded that no "new or additional services" were entailed in the contracts awarded to TWS because TWS had effectively stepped into the shoes of YPC by taking over in 1979 the services YPC had provided under the 1966 YPC contract. The court reasoned that the Secretary properly followed the procedures mandated by 36 C.F.R. § 51.4 (1980), rather than those set forth at 36 C.F.R. § 51.6 (1980). *Id.* at 4.

Moreover, HSI's contentions that there were material questions of fact as to (1) whether the Secretary improperly applied 36 C.F.R. § 51.4, and (2) whether TWS was YPC's successor as that term is used in section 16(b) of the 1970 HSI contract, were rejected on several grounds. The court determined that the question regarding the Secretary's compliance with the applicable regulations is one of law. As to the second question, the court concluded that TWS' successor status is irrelevant, given that no "new or additional" services were performed by TWS and HSI's preferential right applies only to accommodations, services or facilities that are "new or additional." It was also noted that HSI had impliedly forfeited its successorship argument when it agreed to the terms of the 1979 Memorandum of Understanding in which TWS was unambiguously identified as YPC's "successor."

HSI now asks this court to reverse the summary judgment and remand for further proceedings.

## III

### A.

■ Our threshold issue, pressed by the federal defendants, is whether the district court had jurisdiction of HSI's claims against the Secretary. HSI argues that jurisdiction was proper under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. § 2201 (declaratory judgments), 5 U.S.C. § 704 (Administrative Procedure Act), and 16 U.S.C. § 20, *et seq.* (Concessions Policy Act of 1965). *Brief of Appellant* at 3. The government says that the district court lacked subject matter jurisdiction; that the APA waiver of sovereign immunity, 5 U.S.C. § 702, does not apply to what is essentially a disguised action for damages; and HSI may only seek damages in the Claims Court under the Tucker Act, 28 U.S.C. § 1491. *Brief of Appellee* at 19–23.

Since it is settled that the APA, 5 U.S.C. §§ 701, *et seq.*, does not afford an implied

grant of subject-matter jurisdiction permitting federal judicial review of agency action, *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), we focus on the availability of jurisdiction under 28 U.S.C. § 1331 of civil actions arising under the federal Constitution, laws or treaties.

"We begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986); *see also, Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). This presumption favoring judicial review has been reaffirmed over many years by Congress,[8] and is embodied in Sections 702,[9] 703, and 704[10] of the APA. *Abbott Laboratories* at 140, 87 S.Ct. at 1511; *N.A.A.C.P. v. Secretary of Housing and Urban Development*, 817 F.2d 149, 152 (1st Cir. 1987). Nevertheless, the presumption "may be overcome by specific language or specific legislative history" indicating that Congress has decided to exempt a certain type of administrative action from judicial review. *Block v. Community Nutrition Institute*, 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984).

In reviewing a legislative structure for evidence of congressional intent regarding judicial review of agency action, we first note that "the mere fact that some acts are made reviewable [by the express language of the relevant statute or statutes] should not suffice to support an implication of exclusion as to others." *Bowen v. Michigan Academy*, 476 U.S. at 674, 106 S.Ct. at 2137–38 (*citing Abbott Labs.*, 387 U.S. at 141, 87 S.Ct. at 1511). Second, "[e]ven without an explicit provision for judicial review ..., in the absence of strong indications that a statute commits a decision irrevocably to agency discretion ..., the propriety of the agency's action presents a federal question cognizable in the district courts." *Bell v. New Jersey*, 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983) (citations omitted).

We have construed the Tucker Act, 28 U.S.C. § 1491, to mandate that the Claims Court has exclusive jurisdiction over claims against government agencies if (1) "the action seeks monetary relief in excess of $10,000," and (2) "the action is founded upon the Constitution, federal statute, executive regulation, or government contract." *Rogers v. Ink*, 766 F.2d 430, 433 (10th Cir.1985), *transferred to*, 14 Cl.Ct. 39 (1987), *aff'd*, 861 F.2d 729 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1034, 109 S.Ct. 1930, 104 L.Ed.2d 403 (1989).[11] The second con-

---

**8.** *See, e.g.,* H.R.REP. No. 94–1656, 94th Cong., 2d Sess. 10, *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS 6121, 6130 ("As Government programs grow, and agency activities continue to pervade every aspect of life, judicial review of the administrative actions of Government officials becomes more and more important").

**9.** Section 702 provides:
§ 702. **Right of review**
   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be

entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

**10.** 5 U.S.C. § 704 reads in pertinent part:
   Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review....

**11.** In *Bowen v. Massachusetts*, 487 U.S. 879, 910, 108 S.Ct. 2722, 2740, 101 L.Ed.2d 749 (1988), the Court explains that the Claims Court's jurisdiction over claims against the United States for more than $10,000, "is 'exclusive' only to the

dition for exclusive Claims Court jurisdiction is satisfied here whether HSI's action is understood to be "founded upon" the 1966 contract between the NPS and HSI, the APA (5 U.S.C. §§ 701, *et seq.*), the Concessions Policy Act of 1965 (16 U.S.C. § 20, *et seq.*), regulations promulgated under the authority of the Concessions Policy Act, or any combination thereof. The critical question here then, for purposes of determining whether the Tucker Act and 28 U.S.C. § 1331 permit consideration of HSI's claims in the district court, is whether HSI's is an action seeking monetary relief in excess of $10,000. We think it is not.

Although HSI's prayer for relief does not request money damages, we scrutinize claims against the United States to be certain that the plaintiff has not endeavored to "transform a claim for monetary relief into an equitable action simply by asking for an injunction that orders the payment of money." *State of N.M. v. Regan,* 745 F.2d 1318, 1322 (10th Cir.1984). We have emphasized that if the "prime objective" or "essential purpose" of the claim is to recover money from the federal government, the action belongs in the Claims Court. *Eagle–Picher Industries, Inc. v. United States, et al.,* 901 F.2d 1530, 1532 (10th Cir.1990),

*citing State of N.M. v. Regan,* 745 F.2d at 1322; *Rogers v. Ink,* 766 F.2d at 434.

Applying that test here, we are satisfied that the "prime objective" and "essential purpose" of HSI's action is not to obtain monetary relief. At the core of HSI's claim is a challenge to the procedural fairness of a government agency's award of a public contract (to TWS). HSI has not requested compensatory damages, nor money payment of any kind.[12] Rather, the complaint is devoid of any direct or indirect demand for compensatory relief, except attorneys' fees pursuant to the Equal Access to Justice Act. The complaint prays: (1) that the court issue a preliminary and permanent injunction to prevent defendant NPS, its agents, employees, etc. from renewing or negotiating to renew the contract between NPS and TWS; negotiating with any other concessioner or other party to provide the services plaintiff provided in Yellowstone National Park; or interfering with plaintiff's contractual and statutory rights under 16 U.S.C. § 20c and 36 C.F.R. § 51.6; (2) that the court issue a writ of mandamus ordering defendant NPS, its agents and employees to rescind its contractual relationship with TWS, to honor plaintiff's contractual and statutory rights

---

extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." *Id.* 108 S.Ct. at 2740 n. 48. Even if money damages for a given claim are only available in the Claims Court, the Tucker Act does not preclude the same claimant from seeking nonmonetary relief in a district court. *Id.* at 2740–41 n. 48 ("the fact that the purely monetary aspects of the case could have been decided in the Claims Court is not a sufficient reason to bar that aspect of the relief available in a district court"); *see also Adamson v. Radosevic,* 685 F.Supp. 814, 818 (D.Kan.1988) ("[f]or matters outside the scope of the Tucker Act, section 1331 gives district courts jurisdiction to review agency action"), *citing Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

**12.** Recognition that HSI's action against the Secretary is not an action for money damages resolves the issue of the waiver of sovereign immunity raised by the government. *Brief for the Federal Appellees* at 20. The A.P.A. states in pertinent part:

... An action in a court of the United States *seeking relief other than money damages* and

stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States....

5 U.S.C. § 702.

In *Bowen v. Massachusetts,* 487 U.S. 879, 894, *et seq.,* 108 S.Ct. 2722, 2732, *et seq.,* 101 L.Ed.2d 749 (1988), the Court pointed out the specific meaning Congress intended when it provided the "money damages" exception from the waiver of sovereign immunity in the 1976 amendment. The Court quoted Judge Bork's views in *Maryland Dept. of Human Resources v. Department of Health and Human Services,* 763 F.2d 1441, 1446 (D.C.Cir.1985): "The term 'money damages,' 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" (citing D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)) (emphasis in original).

*"by offering Plaintiff the opportunity to provide the new or additional accommodations,"* and not to renew TWS' contract; (3) for a judgment declaring the rights and duties of plaintiff and defendant NPS under the contract and adjudging that *"[i]t is mandatory that Defendant NPS honor Section 16 of the contract ... [and] comply with 36 C.F.R. § 51.6 when it seeks to authorize new or additional accommodations,"* and that defendants failed to comply with the contract and that NPS failed to follow the mandatory requirements of 36 C.F.R. § 51.6; and (4) for attorneys' fees under the Equal Access to Justice Act. I R. Complaint at 8–10 (emphasis added).[13]

Thus, the complaint specifically sought to require the defendant NPS to offer plaintiff *the opportunity* to provide the new and additional accommodations in accordance with plaintiff HSI's preferential right, and not to require payment of compensatory damages. This makes the instant case analogous to *Adamson v. Radosevic*, 685 F.Supp. 814 (D.Kan.1988), where the right *to submit a bid* was being protected. *Eagle–Picher's* analysis did not question district court jurisdiction in the latter type of case like *Adamson*. 901 F.2d at 1532–33.

In sum, here the primary purpose and essential objective of HSI's suit was to protect its preferential right to offer to afford new or additional accommodations, not to require the payment of compensatory damages. The claim of violation of plaintiff HSI's rights under the statute and regulations, and the parallel contract provi-

sions, comes within federal question jurisdiction of the district court under 28 U.S.C. § 1331 for review of the challenged agency action. See *Bell v. New Jersey*, 461 U.S. 773, 777–778 n. 3, 103 S.Ct. 2187, 2190 n. 3. There is appropriate federal question jurisdiction under § 1331 to adjudicate the plaintiff's federal claims here of violation by the defendants of the Concessions Policy Act of 1965, 16 U.S.C. § 20, *et seq.;* regulations promulgated under that Act, 36 C.F.R. §§ 51.1–51.7 (1989); and the plaintiff's claim premised on its contract with NPC, a federal agency—a federal question itself. *United States v. Allegheny County*, 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944) (validity and construction of contracts through which the government exercises its constitutional functions and their consequences on rights and obligations of the parties present questions of federal law). Moreover, an action asserting a claim founded on such a contract with a federal agency is one arising under the Constitution or laws of the United States within the jurisdiction conferred by 28 U.S.C. § 1331 on the federal district courts. See *Eatmon v. Bristol Steel & Ironworks, Inc.*, 769 F.2d 1503, 1517 (11th Cir.1985); *cf. National Farmers Union Ins. Companies v. Crow Tribe*, 471 U.S. 845, 850–51, 105 S.Ct. 2447, 2450–51, 85 L.Ed.2d 818 (1985).

We hold that plaintiff HSI's case was within the district court's § 1331 jurisdiction and not within the exclusive Tucker Act jurisdiction of the Claims Court over monetary claims.[14]

---

**13.** Further evidence of the absence of a demand for money damages in the instant suit appears in the district court's order granting defendants' motion for summary judgment, the foundation of this appeal. That order points out, at p. 6, that plaintiff HSI brought an earlier tort action under the FTCA for damages, which suit was dismissed for lack of jurisdiction (the complaint not stating a tort claim for FTCA jurisdiction and no administrative claim required by the FTCA having been filed). The court then said, p. 6: "Plaintiff chose not to bring an action for damages in the United States Claims Court, and instead filed the present action seeking a writ of mandamus ordering the rescission of the TWS contract."

**14.** The Supreme Court has indicated the importance of district court review of agency action in preference to Claims Court Tucker Act jurisdiction. In *Bowen v. Massachusetts*, 487 U.S. at 908 n. 46, 108 S.Ct. at 2739 n. 46 the Court quotes the following discussion from *Delaware Div. of Health and Human Services v. DHHS*, 665 F.Supp. 1104, 1117 n. 15 (D.Del.1987):

*[T]he policies of the APA take precedence over the purposes of the Tucker Act.* In the conflict between two statutes, established principles of statutory construction mandate a broad construction of the APA and a narrow interpretation of the Tucker Act. The Court of Claims is a court of limited jurisdiction, because its *jurisdiction is statutorily granted and it is to* be strictly construed.

## B.

Turning to the propriety of the summary judgment for the defendants, we begin with the pertinent language of Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

As noted, the district court rejected HSI's contentions that there were material questions of fact as to (1) whether the Secretary improperly applied 36 C.F.R. § 51.4, and (2) whether TWS was YPC's successor, as that term is used in section 16(b) of the 1970 HSI contract. The court concluded that the first question regarding the Secretary's compliance with the applicable regulations is one of law. On the second question, the court reasoned that TWS' successor status is irrelevant, given that no new or additional services were performed by TWS and that HSI's preferential right applies only to accommodations, services or facilities that are "new or additional." We must determine whether there was a genuine issue of material fact and whether the defendants were entitled to judgment in their favor as a matter of law. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

We agree with the district court's conclusion that there is no genuine issue of material fact for trial. Even when all justifiable inferences are drawn in favor of the non-moving party, *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, the question whether the NPS was obliged to follow 36 C.F.R. § 51.4, remains one of law. At issue is the relation of the HSI/NPS 1970 contract, the YPC/NPS 1966 contract, the 1979 and 1982 TWS/NPS contracts and the Secretary's regulations at 36 C.F.R. §§ 51.1–51.7. In the circumstances of this case, the construction and reconciliation of the contractual, statutory and regulatory provisions is an essentially legal enterprise.[15]

■ First, we deal with the central question of whether HSI's "preferential right", set forth in § 16(a) of its 1970 contract with the NPS, required NPS to follow § 51.6 (preferential right for additional services where specific contract provision exists) rather than § 51.4 (award of concession services where no contractual right of preference exists) in awarding concession services to TWS. 36 C.F.R. §§ 51.4 & 51.6 (1985). We note at the outset that we agree with the district court's conclusion that the NPS correctly followed § 51.4.

*Bowen v. Massachusetts*, 487 U.S. at 908 n. 46, 108 S.Ct. at 2739 n. 46 (emphasis added). *See also Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 867 (D.C.Cir.1970) ("Clearly the Congress favors [district court] review for those who are likely to be injured by illegal agency action in the context of government contracting."); *Chemung County v. Dole*, 781 F.2d 963, 969 (2d Cir.1986) ("To maintain the integrity of the bidding process, the district court must be able to review the procedures followed and determine the successful offeror after ... [a government contract] award has been made."); *accord Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d 609, 619 n. 17 (11th Cir.1985) (in dispute over procedure by which government contract was awarded, "[w]e ... do not hesitate to review the contracting officer's interpretation of the regulatory scheme that governed his conduct...."); *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1373–74 (Fed.Cir.1983) (en banc); *Glacier Park Foundation v. Watt*, 663 F.2d 882, 886 (9th Cir.1981) (district court has jurisdiction to review agency contracting offi-

cer's compliance with contracting regulations); *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119, 1121–23 (4th Cir.1977) (district court had jurisdiction to review meaning and scope of "preferential right" provision in contract between concessioner and NPS.); *Adamson v. Radosevic*, 685 F.Supp. 814, 820 (D.Kan.1988) (district court has jurisdiction to hear post-award claim by terminated public contractor seeking nonmonetary relief for wrongful termination.); *see also Integrity Mgt. Intern. v. Tombs & Sons*, 836 F.2d 485, 489 (10th Cir.1987) (dictum) (acknowledging right of unsuccessful public contract bidder to challenge procedure by which contract was awarded); Feidelman & Ursini, *Contract Jurisdiction of the United States Claims Court*, 32 CLEV.ST.L.REV. 41, 50 (1983–84) ("disappointed [public contract] bidders in post-award situations may seek relief in the district courts.").

15. 10A WRIGHT, MILLER & KANE § 2730.1 at 180–81 (1983) ("The legal effect or construction of a contract is a question of law....").

Section 16(a) defines HSI's preferential right and provides, in part:

(a) The Concessioner is granted a preferential right, not an exclusive right or monopolistic right, to provide public accommodations, facilities, and services in the park of the character authorized hereunder, ... The Secretary will request the Concessioner to provide such *new or additional accommodations, facilities, or services*, of the same character as the Secretary may consider necessary or desirable for the accommodation and convenience of the public.

*1970 HSI Contract*, § 16(a) (emphasis added).

As indicated by the district court, § 16(a) appears to have been based on § 51.3(c) ("Definitions") which states that a: " '[p]referential [r]ight' refers to the right to provide *new or additional services and facilities* which may be granted to a concessioner by Concession Contract as the Director may consider necessary for the accommodation and convenience of the public." 36 C.F.R. § 51.3(c) (1980). Furthermore, when a preferential right exists § 51.6 requires the NPS' Director to:

develop a description of the new or additional services and the terms and conditions upon which they are to be provided without reference to any private party and give the existing concessioner a reasonable opportunity to review such description to determine if he wishes to provide the services. *Id.* at § 51.6.

HSI contends that its preferential right in § 16(a) was violated when NPS awarded TWS the right to operate the concession facilities that were previously operated by YPC because the award involved "new and additional services" that should have been offered first to HSI. *Brief for Appellant* at 19–21. We note that the NPS has not articulated a precise definition of what constitutes "new and additional services." Consequently, we must compare the grant of services expressed in the previous contract between YPC and NPS with the two subsequent contracts between TWS and NPS to see if NPS provided TWS with "new and additional services" that should have been offered to HSI.

HSI claims that the "new and additional services" included: (1) the expansion of the size and scope of TWS' gift services, especially involving the sale of souvenirs; (2) the construction of a new gift shop and restaurant facility; (3) the addition of ice cream parlors, visitor-viewed fudge machines, fast food services, and various handcraftsmen to its retail operation; and (4) the acquisition of an interest in service stations in Yellowstone National Park for increasing its food and beverage services and selling souvenirs. *Id.* at 25–26 (citing Affidavit of Trevor Povah, President of HSI, September 12, 1985). According to HSI, these services were never envisioned by either YPC or NPS when they entered into their contract in 1966 and, therefore, are "new and additional services."

We disagree and affirm the district court's decision that these services were not "new and additional services" but rather preexisting services that were initially sanctioned in Section 2(a) of the original 1966 YPC/NPS contract. Dist.Ct.Op. at 6. Section 2(a) expressly and broadly authorized YPC to provide the public with "[l]odging accommodations [and] food and beverage service facilities"—the very items HSI now complains constitute "new and additional services." *Brief for Appellant* at 4. Indeed, these preexisting services had been performed by YPC for some years and were subsequently incorporated into the two-year and five-year contracts between TWS and NPS. Furthermore, HSI received a prospectus from NPS concerning its offer to sell the preexisting services of YPC but HSI never submitted any proposals to acquire them. *Brief for Appellant* at 10; *Brief for Appellee* at 10–11. Instead, representatives of HSI and NPS signed a "Memorandum of Understanding re: Scope of Gift Operations to be Carried out by Yellowstone Park Company's Successor/August, 1979", which clarified HSI's right to sell souvenirs and limited such sales by YPC's successor—ultimately TWS. *Id.*

HSI's preferential right to offer "new and additional services" under § 16(a) of the 1970 HSI/NPS contract was never violated because no "new and additional services" are involved in the contracts between TWS and NPS. Therefore, we cannot say that the Secretary's decision that the NPS should follow 36 C.F.R. § 51.4 was plainly erroneous or otherwise inconsistent with the regulations at 36 C.F.R. §§ 51.1–51.7 (1989).[16]

 In addition, the district court points out that the Secretary's interpretation of the term, "new or additional services", and the relation of that term to HSI's "preferential right" contract provision, renders irrelevant the question whether TWS was YPC's "successor" under § 16(b) of the HSI/NPS contract. Section 16(b) provides:

> Nothing contained in this section or elsewhere in this contract shall be construed as prohibiting or curtailing operations conducted in the park by other concessioners now authorized by the Secretary to provide accommodations therein for the public. This subsection shall include also the *successors* and assigns of such concessioners, when approved by the Secretary. (emphasis added).

Thus, HSI's contractual rights are not to be construed to prohibit or curtail existing services that were originally provided by YPC. *1970 HSI Contract* § 16(b) at 17. It is within the realm of reasonable interpretation for the Secretary to understand § 16(b) to apply to TWS, as TWS provides substantially the same services that had previously been provided by YPC. *Edwards v. Califano*, 619 F.2d 865, 868 (10th Cir.1980) (standard of review under 5 U.S.C. § 706(2)(A) "is a narrow one"). Therefore, we agree with the Secretary's interpretation.

We also agree with the district court's finding that even if § 16(b) were applicable to the services provided by TWS, the meaning of "successor" is not a material ques-

tion of fact because HSI acknowledged in its 1979 MOU with NPS that there would be a "successor" to YPC. Moreover, both HSI and NPS agreed in the MOU to incorporate a provision into any successor's contract limiting the successor's sales of souvenirs. Accordingly, NPS complied with the MOU and incorporated this limitation on souvenir sales into its two contracts with TWS. HSI cannot now complain that TWS is not a successor to YPC after it has reaped the benefits of the provision limiting TWS' sales of souvenirs.

AFFIRMED.

---

16. In a case that also concerned the Secretary of the Interior's discretion under the general mandates of the Concessions Policy Act, 16 U.S.C. § 20, and 16 U.S.C. § 3, the Ninth Circuit held that "[w]here several administrative solutions exist for a problem, courts will uphold any one with a rational basis," as long as it is not arbitrary. *Wilderness Public Rights Fund v. Kleppe*, 608 F.2d 1250, 1254 (9th Cir.1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).